OLIVIA R. SINGER (CA BAR NO. 312770)
osinger@cwsny.com
MATTHEW E. STOLZ (admitted *pro hac vice*)
mstolz@cwsny.com
COHEN WEISS AND SIMON LLP
909 3rd Avenue, 12th Floor
New York, NY, 10022-4731
Telephone: (212) 356-4100
Facsimile: (646) 473-8206

JULIE GUTMAN DICKINSON (SBN 148267)
jgutmandickinson@bushgottlieb.com
DAVID E. AHDOOT (SBN 245133)
dahdoot@bushgottlieb.com
BUSH GOTTLIEB, A Law Corporation
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260
Telephone: (818) 973-3200
Facsimile: (818) 973-3201

Attorneys for Defendants Screen Actors
Guild-American Federation of Television
and Radio Artists and AFM & SAG-
AFTRA Intellectual Property Rights
Distribution Fund

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JACOB L. C. BROIDO, an individual,<br><br>        Plaintiff,<br><br>        vs.<br><br>WARNER MUSIC GROUP CORP., NBC UNIVERSAL MEDIA, LLC, AGM AND SAG-AFTRA INTELLECTUAL PROPERTY RIGHTS DISTRIBUTION FUND, SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, AFL-CIO, DOES 1-25, inclusive, and UNIVERSAL MUSIC GROUP HOLDINGS, INC.,<br><br>        Defendants. | Case No. 2:26-cv-00947-CV-DSR<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS SAG-AFTRA AND AFM & SAG-AFTRA INTELLECTUAL PROPERTY RIGHTS DISTRIBUTION FUND TO DISMISS FIRST AMENDED COMPLAINT**<br><br><u>Hearing Information</u><br><br>Date: June 5, 2026<br>Time: 1:30 p.m.<br><br>Complaint Served: March 4, 2026<br>Response Date: May 6, 2026 |

**TO PLAINTIFF AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 5, 2026, at 1:30 p.m., in the courtroom of the Honorable Cynthia Valenzuela, Courtroom 10B, located in the United States Courthouse, 350 West 1st Street, Los Angeles, CA 90012, Defendants Screen Actors Guild-American Federation of Television and Radio Artists and AFM & SAG-AFTRA Intellectual Property Rights Distribution Fund will and hereby do move this Court to Dismiss the Complaint.

This Motion is made upon the following grounds:

1.      That the Fourth, Fifth, Sixth, and Seventh Causes of Action are preempted by federal labor law; and

2.      That all Causes of Action fail to state a plausible claim for relief.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Matthew E. Stolz filed concurrently herewith and exhibits attached thereto, the Declaration of Matthew E. Stolz Pursuant to Local Rule 7-3 filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on April 21, 2026.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...........................................................................................................1

STATEMENT OF FACTS ...............................................................................................................2

    A.    The Parties and the Collective Bargaining Agreements.........................................2

    B.    Plaintiff's Allegations in the FAC...........................................................................4

    C.    Compensation for Recording Artists .......................................................................5

    D.    Causes of Action Pleaded.........................................................................................9

ARGUMENT ...................................................................................................................................9

I.    Standard of Review ...............................................................................................................9

II.    Federal Labor Law Preempts Most of Plaintiff's Claims Against SAG-AFTRA and the Fund ...........................................................................................................................12

    A.    Section 301 Preemption ........................................................................................12

        1.    Section 301 Preempts Plaintiff's Breach of Contract Claim (Seventh Cause of Action) against SAG-AFTRA and the Fund ..............................13

        2.    Section 301 Preempts Plaintiff's Conspiracy to Defraud Claim (Fifth Cause of Action) against SAG-AFTRA ......................................................14

        3.    Section 301 Preempts Plaintiff's Claim for Breach of California's Unfair Competition Law (Sixth Cause of Action) ...................................15

        4.    Plaintiff Cannot Replead his Preempted Claims as Section 301 Claims..................................................................................................15

    B.    DFR Preemption.....................................................................................................16

III.    Plaintiff Fails to State a Claim Against the Fund for Breach of Fiduciary Duty (Fourth Cause of Action)................................................................................................18

IV.    Plaintiff Fails to Plausibly Allege the Elements of His Remaining Claims.....................20

    A.    Plaintiff Fails to State a Claim Against SAG-AFTRA or the Fund for Breach of an Implied-in-Fact Contract (Second Cause of Action) .......................20

    B.    Plaintiff Fails to State a Claim Against SAG-AFTRA or the Fund for Breach of the Sound Recordings CBA (Seventh Cause of Action) .....................20

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

C.    Plaintiff Fails to State a Claim Against SAG-AFTRA for Conspiracy to Defraud (Fifth Cause of Action) ..............................................................21

D.    Plaintiff Fails to State a Claim Against SAG-AFTRA or the Fund for Breach of California's Unfair Competition Law (Sixth Cause of Action)............23

CONCLUSION ..............................................................................................................24

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

DEFENDANTS SAG-AFTRA AND AFM & SAG-AFTRA INTELLECTUAL PROPERTY RIGHTS DISTRIBUTION FUND'S MOTION TO DISMISS

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Adkins v. Mireles*,
526 F.3d 531 (9th Cir. 2008) ........................................................... 13, 14, 16, 17

*Aguilera v. Pirelli Armstrong Tire Corp.*,
223 F.3d 1010 (9th Cir. 2000) ................................................................. 13, 14

*Ajzenman v. Office of the Comm'r of Baseball*,
487 F. Supp. 3d 861 (C.D. Cal. 2020) ............................................................ 22

*Allis-Chalmers Corp. v. Lueck*,
471 U.S. 202 (1985) ................................................................................ 13, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................... 9, 10

*Avco Corp. v. Aero Lodge No. 735, IAM*,
390 U.S. 557 (1968) ......................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................... 10

*Bly-Magee v. California*,
236 F.3d 1014 (9th Cir. 2001) ................................................................. 12, 22

*Cabarga v. S. Cal. Edison Co.*,
No. 14-CV-08813 (JAK), 2015 WL 13914792 (C.D. Cal. Mar. 19, 2015) ............................................................................................................ 14, 15

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) ......................................................... 11, 21, 22

*Carr v. Pac. Mar. Ass'n*,
904 F.2d 1313 (9th Cir. 1990) ....................................................................... 15

*Caterpillar v. Williams*,
482 U.S. 386 (1987) ......................................................................................... 13

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

DEFENDANTS SAG-AFTRA AND AFM & SAG-AFTRA INTELLECTUAL PROPERTY RIGHTS DISTRIBUTION FUND'S MOTION TO DISMISS

*Clark v. Prudential Fin., Inc.*,
   No. CV 10–4953 GAF, 2010 WL 11601071 (C.D. Cal. Sept. 3, 2010) ............................................................................................................. 14

*Condon v. Local 2944*,
   683 F.2d 590 (1st Cir. 1982) ......................................................................... 16

*Culfin v. IBEW Local 11*,
   No. CV 10-02748 DDP, 2010 WL 2465393 (C.D. Cal. June 15, 2010) ............................................................................................................. 16

*DelCostello v. Int'l Bhd. of Teamsters*,
   462 U.S. 151 (1983) ................................................................................ 15, 18

*Fleites v. MindGeek S.A.R.L.*,
   801 F. Supp. 3d 1011 (C.D. Cal. 2025) ........................................................ 23

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr. Fund for S. Cal.*,
   463 U.S. 1 (1983) .......................................................................................... 13

*Gonzalez v. Planned Parenthood of L.A.*,
   759 F.3d 1112 (9th Cir. 2014) ...................................................................... 11

*Hyles v. Mensing*,
   849 F.2d 1213 (9th Cir. 1988) ...................................................................... 23

*IBEW v. Hechler*,
   481 U.S. 851 (1987) ................................................................................ 13, 14

*Ithier v. Aponte-Cruz*,
   105 F.4th 1 (1st Cir. 2024) .......................................................................... 8, 9

*James v. United Furniture Workers Local 8926*,
   No. 21-cv-03893-JCS, 2021 WL 3616776 (N.D. Cal. Aug. 16, 2021) ............................................................................................................. 17

*Jay v. SEIU-United Health Care Workers W.*,
   203 F. Supp. 3d 1024 (N.D. Cal. 2016) ............................................ 14, 15, 17

*Johnson v. UFCW, Int'l Union Loc. No. 23*,
   828 F.2d 961 (3d Cir. 1987) ......................................................................... 16

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

DEFENDANTS SAG-AFTRA AND AFM & SAG-AFTRA INTELLECTUAL PROPERTY RIGHTS DISTRIBUTION FUND'S MOTION TO DISMISS

*Kacher Firestopping, Inc. v. Local No. 5*,
No. SACV 08-00610-CJC(ANx), 2008 WL 11337452 (C.D. Cal. June 30, 2008) ............................................................................................... 24

*Kalombo v. Hughes Market, Inc.*,
886 F.2d 258 (9th Cir. 1989) ....................................................................... 18

*Kane v. Matson Navigation Co.*,
645 F. Supp. 3d 942 (N.D. Cal. 2022) ......................................................... 14

*Kelley v. IBEW*,
803 F.2d 516 (9th Cir. 1986) ....................................................................... 15

*Kobayashi v. McMullin*,
No. 2:19-cv-06591-SSS (MAA), 2023 WL 3493991 (C.D. Cal. Mar. 2, 2023) .................................................................................................... 20

*Kobold v. Good Samaritan Reg'l Med. Ctr.*,
832 F.3d 1024 (9th Cir. 2016) ..................................................................... 13

*Lingle v. Norge Div. of Magic Chef, Inc.*,
486 U.S. 399 (1988) ..................................................................................... 13

*Marder v. Lopez*,
450 F.3d 445 (9th Cir. 2006) ....................................................................... 10

*Marquez v. Screen Actors Guild, Inc.*,
525 U.S. 33 (1998) ....................................................................................... 16

*Martin v. Masters, Mates & Pilots*,
No. 25-cv-04382-RFL, 2025 WL 2444589 (N.D. Cal. Aug. 25, 2025) .......................................................................................................... 18

*Mellon v. Universal City Studios, LLC*,
625 F. Supp. 3d 1007 (C.D. Cal. 2022) ....................................................... 24

*Moore v. Kayport Package Express, Inc.*,
885 F.2d 531 (9th Cir. 1989) ....................................................................... 22

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) .................................................................. 10, 11

*Persian Gulf, Inc. v. BP W. Coast Prods., LLC*,
632 F. Supp. 3d 1108 (S.D. Cal. 2022) ....................................................... 24

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Peterson v. Air Line Pilots Ass'n*,
     759 F.2d 1161 (4th Cir. 1985) ................................................................................. 16

*SoundExchange, Inc. v. Copyright Royalty Bd.*,
     904 F.3d 41 (D.C. Cir. 2018) ...................................................................................... 8

*Starr v. Baca*,
     652 F.3d 1202 (9th Cir. 2011) .................................................................................. 10

*Sybersound Records, Inc. v. UAV Corp.*,
     517 F.3d 1137 (9th Cir. 2008) .................................................................................. 23

*Taguinod v. World Sav. Bank, FSB*,
     755 F. Supp. 2d 1064 (C.D. Cal. 2010) .................................................................... 24

*United Steelworkers of Am. v. Rawson*,
     495 U.S. 362 (1990) .................................................................................................. 16

*Vaca v. Sipes*,
     386 U.S. 171 (1967) .................................................................................................. 16

*Winebarger v. Penn. Higher Educ. Assistance Agency*,
     411 F. Supp. 3d 1070 (C.D. Cal. 2019) .................................................................... 18

**California Cases**

*Kasky v. Nike, Inc.*,
     45 P.3d 243 (Cal. 2002) ............................................................................................ 24

*Mayes v. Sturdy N. Sales, Inc.*,
     154 Cal. Rptr. 43 (Cal. Dist. Ct. App. 1979) ........................................................... 21

*Presta v. Tepper*,
     102 Cal. Rptr. 3d 12 (Cal. Dist. Ct. App. 2009) ...................................................... 20

**Federal Statutes and Regulations**

17 U.S.C. § 114(g) ............................................................................................... 3, 8, 19

17 U.S.C. § 106(6) ..................................................................................................... 7

29 U.S.C. § 185 ......................................................................................................... 12

37 C.F.R. § 380.4 ........................................................................................................ 8

37 C.F.R. § 380.6 ........................................................................................................ 9

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Fed. R. Civ. P. 17(a) ......................................................................................9

**California Statutes**

Cal. Bus. & Prof. Code
§ 17200 *et seq.* .....................................................................................9, 23

Cal. Prob. Code
§ 16040(a)................................................................................................19

**Other Authorities**

Restatement (Third) of Trusts § 77(1)-(2) (2007) ......................................19

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

DEFENDANTS SAG-AFTRA AND AFM & SAG-AFTRA INTELLECTUAL PROPERTY RIGHTS DISTRIBUTION FUND'S MOTION TO DISMISS

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Defendants Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA") and AFM & SAG-AFTRA Intellectual Property Rights Distribution Fund ("the Fund") submit this memorandum of law in support of their motion to dismiss Plaintiff Jacob Broido's ("Plaintiff") First Amended Complaint ("FAC") [Dkt. No. 11].

## PRELIMINARY STATEMENT

Plaintiff believes he has been undercompensated for his vocal performance on "See You Again" (the "Song"), a song prominently featured in the 2015 film *Furious 7.* Plaintiff mainly takes aim at the record labels and film studios that own the Song—defendants Warner Music Group ("Warner"), NBC Universal Media ("NBC") and Universal Music Group Holdings ("UMG") (collectively, the "Corporate Defendants")—and alleges that these entities have profited from the Song at Plaintiff's expense. However, Plaintiff also alleges that SAG-AFTRA, a labor union that represents actors and artists in the film and music industries, and the Fund, an independent nonprofit that distributes song royalties guaranteed by federal statute, played a hand in the Corporate Defendants' wrongdoing. The Fund by allegedly failing to properly investigate the Corporate Defendants' representations about the Song, and SAG-AFTRA by allegedly failing to protect Plaintiff's interests and lying about what he is owed. Regardless of whether Plaintiff has a legitimate dispute with the Corporate Defendants, Plaintiff's allegations against SAG-AFTRA and the Fund are fundamentally misplaced.

*First*, as explained in Part II, most of Broido's claims against SAG-AFTRA and the Fund are premised on SAG-AFTRA's collective bargaining agreements ("CBAs") covering the music and film industries, which guarantee minimum wages and benefits for performers and provide for certain forms of downstream compensation tied to the success of a film or song. Broido cannot maintain state law causes of action against SAG-AFTRA and the Fund regarding monies he thinks he is owed under the CBAs because CBAs (and SAG-AFTRA's duty to enforce the CBAs) are governed

exclusively by federal labor law, which preempts most of Plaintiff's state law causes of action.

*Second*, as detailed in Part III, Plaintiff misunderstands the Fund's role in collecting and distributing song royalties. Although he claims entitlement to a larger share of the Song's downstream revenue as a "featured" artist and to film residuals for *Furious 7*, those allegations are unrelated to the Fund's operations. The Fund collects and distributes statutory royalties only for nonfeatured artists, not for featured artists, and it does not collect or distribute film residuals. Plaintiff receives nonfeatured artist royalties from the Fund. Any claim to featured artist royalties or film residuals lies elsewhere.

*Third*, as set forth in Part IV, Plaintiff's allegations cast a wide net, which ensnares SAG-AFTRA and the Fund as collateral defendants in claims that are clearly aimed at others. In addition to the legal deficiencies described herein, Plaintiff's claims against SAG-AFTRA and the Fund fail because he does not plead facts in support of those claims.

For these and other reasons explained herein, the Court should dismiss the FAC against SAG-AFTRA and the Fund.

## STATEMENT OF FACTS[1]

### A.    The Parties and the Collective Bargaining Agreements

SAG-AFTRA is a labor organization that represents, among others, performers in the entertainment industry. FAC ¶44. There are two SAG-AFTRA CBAs relevant to this suit: the SAG-AFTRA National Code of Fair Practice for Sound Recordings, as amended by various memoranda of agreement (the "Sound Recordings CBA"), which covers recorded vocal performances (*e.g.*, songs, audiobooks, etc.), and the Producer-

---

[1] Solely for purposes of this Motion, SAG-AFTRA and the Fund assume the truth of the factual allegations in the FAC unless contradicted by statute or a document incorporated into to the FAC, *see infra*, Part I.

DEFENDANTS SAG-AFTRA AND AFM & SAG-AFTRA INTELLECTUAL PROPERTY RIGHTS DISTRIBUTION FUND'S MOTION TO DISMISS

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

SAG-AFTRA Codified Basic Agreement, as amended by various memoranda of agreement (the "Theatrical CBA"), which covers performances in films, including, in relevant part, certain musical vocal performances.[2]

The Fund is a 501(c)(6) nonprofit organization whose primary purpose, as described further *infra,* is to distribute royalties guaranteed by federal statute to nonfeatured vocalists and musicians when their songs are played on certain digital streaming services. FAC ¶¶47, 66; *see also* 17 U.S.C. § 114(g)(2). Though the Fund is governed by a board of trustees appointed by SAG-AFTRA and another labor union, the American Federation of Musicians, the Fund is a legally distinct entity from the unions, and it distributes statutory royalties without regard to an artist's union membership. FAC ¶114.

Defendants Warner and UMG are record labels engaged in the business of producing and selling music. FAC ¶¶43, 46, 56, 63, 65. Both Warner and UMG are signatories to the Sound Recordings CBA. FAC ¶130. Defendant NBC is a film studio engaged in, *inter alia*, the production of feature films. FAC ¶¶45, 111. NBC is signatory to the Theatrical CBA. FAC ¶130.

---

[2] Though neither the Sound Recordings CBA nor the Theatrical CBA is attached to the FAC, it is permissible for the Court to consider both CBAs on a motion to dismiss as documents whose contents are alleged in the FAC and upon which the FAC necessarily relies, as discussed further *infra*, Part I. The CBAs, including their various amending memoranda of agreement, span multiple documents totaling over one thousand pages. SAG-AFTRA and the Fund attach only the specific documents relevant to Plaintiff's claims. A copy of the Sound Recordings CBA is attached as Exhibit A to the May 6, 2026 Declaration of Matthew E. Stolz ("Stolz Decl."), filed herewith. A copy of the 2015-2017 Memorandum of Agreement to the Sound Recordings CBA (the "2015-2017 MOA") is attached as Exhibit B to the Stolz Declaration. A copy of the 2018-2020 Memorandum of Agreement to the Sound Recordings CBA (the "2018-2020 MOA") is attached as Exhibit C to the Stolz Declaration. A copy of the Theatrical CBA is attached as Exhibit D to the Stolz Declaration. And a copy of Sideletter 22 to the Theatrical CBA ("Sideletter 22") is attached as Exhibit E to the Stolz Declaration.

DEFENDANTS SAG-AFTRA AND AFM & SAG-AFTRA INTELLECTUAL PROPERTY RIGHTS DISTRIBUTION FUND'S MOTION TO DISMISS

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Plaintiff is a singer who performed vocals on the Song in early 2015. FAC ¶¶6-7. Plaintiff does not allege that he is or was a member of SAG-AFTRA.

### B.    Plaintiff's Allegations in the FAC

Plaintiff alleges that on an unspecified date in early 2015, Charlie Puth approached Plaintiff in Warner's office and asked him to sing vocals for a version of the Song. FAC ¶¶6-7, 57-58. Plaintiff alleges that he understood at the time that the Song would be pitched "to be included in the *Furious 7* movie." FAC ¶8.

Plaintiff alleges that he did not sign any paperwork relating to his performance on the Song and did not sign a "work made for hire" agreement. FAC ¶9. Though Plaintiff alleges that the Song was recorded under the Sound Recordings CBA, FAC ¶¶130-32, Plaintiff alleges that he did not receive session wages or benefits guaranteed by the Sound Recordings CBA for his performance on the Song. FAC ¶133.

At some unspecified time, Plaintiff alleges that Warner submitted documentation to the Fund through SAG-AFTRA listing "3 A&R staffers" as the "background singers" on the Song but not listing Plaintiff by name. FAC ¶¶69-71. Plaintiff alleges that Warner also characterized Plaintiff as a "non-featured" artist on the Song and characterized the song as "non-theatrical," and the Fund subsequently neglected to challenge these designations. FAC ¶115. Further, Plaintiff alleges that at some unspecified time SAG-AFTRA made some unspecified "false and misleading statements" to Plaintiff to cover up the Fund's wrongdoing. FAC ¶124.

As a result of these omissions and falsifications, Plaintiff alleges that "royalty payments due to [Plaintiff] were delayed," FAC ¶73, and Plaintiff was "cheated out of royalty payments and downstream compensation." FAC ¶75. However, Plaintiff does not specifically allege that the Fund failed to distribute any statutory royalties he may have been owed as a nonfeatured artist on the Song. *See* FAC ¶115.

Though Plaintiff alleges that he did not receive session wages and benefits or certain downstream compensation in connection with the Song, Plaintiff does not

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

allege that he ever contacted SAG-AFTRA to raise his concerns and initiate the grievance and arbitration procedures available under either CBA.

## C.    Compensation for Recording Artists

In relevant part, this case concerns the compensation Plaintiff believes he is owed for his vocal performance on the Song, and SAG-AFTRA's and the Fund's roles in helping him secure that compensation. As the FAC intimates, a recording artist's compensation is not as straightforward as a set wage for a day's work. Recording artists may have access to multiple revenue streams derived from multiple sources, such as session wages for time spent in the studio, FAC ¶130, and downstream compensation tied to a song's success, which can include royalties guaranteed by federal statute, FAC ¶66, other downstream payments guaranteed by the Sound Recordings CBA, FAC ¶¶113, 130, and film residuals guaranteed by the Theatrical CBA, FAC ¶113, 130. Some of these revenue streams involve SAG-AFTRA, the Fund, or both.

Relevant to the allegations in the FAC, there are four potential compensation streams for recording artists in which either SAG-AFTRA or the Fund plays a role: 1) session wages and benefits (SAG-AFTRA); 2) SRDF payments (SAG-AFTRA); 3) film residuals (SAG-AFTRA); and 4) statutory royalties (the Fund).

### 1.    Session wages and benefits

Both the Sound Recordings CBA and the Theatrical CBA contain provisions governing the payment of session wages and benefits owed to actors and vocalists who perform on projects under the CBAs. *See* Stolz Decl. Exs. A (Sound Recording CBA, §§ 6-7, at p. 5-11); D (Theatrical CBA, § 33, at p. 97). Both the Sound Recordings CBA and the Theatrical CBA also outline "grievance and arbitration" procedures through which SAG-AFTRA can challenge employer actions that violate the CBAs. *Id.* Exs. A (Sound Recording CBA, §3, at p. 4); C (2018-2020 MOA, § 2, at p. 3-4); D (Theatrical CBA, § 9, at p. 52-58). All disputes under the Sound Recordings CBA must be raised within one year of when the employee knew or should have known of the

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

event giving rise to a claim, but in no event may a dispute be raised more than two years after the event giving rise to the claim. *Id.* Ex. C (2018-2020 MOA, § 2, at p. 3-4). Disputes over pay under the Theatrical CBA must be raised within 6 months of when the disputed pay was due or within 6 months of when the employee had "a reasonable opportunity to become aware" that the disputed pay was due. *Id.* Ex. D (Theatrical CBA, §9(F)(1), at p. 55).

### 2. SRDF Payments

Vocalists who perform on a song recorded under the Sound Recordings CBA may also be entitled to downstream payments guaranteed by the Sound Recordings CBA ("SRDF payments"). SRDF payments include payments for song or music video downloads and streams and payments for when the record label licenses a song for use in television, films, advertisements, etc. *See id.* Ex. B (2015-2017 MOA, § 5-6, at p. 2-10). Record labels make SRDF payments to the SAG-AFTRA and Industry Sound Recordings Distribution Fund (the "SRDF"), which in turn distributes the payments to vocalists entitled to such payments under the terms of the Sound Recordings CBA. *See id.* Ex. B (2015-2017 MOA, § 5.2(b), at p. 3); FAC ¶113.[3]  Any disputes over SRDF payments are governed by the Sound Recordings CBA's grievance and arbitration procedures, including its statute of limitations.

---

[3] As described at several places in the Sound Recordings CBA, SRDF payments are collected on behalf of and paid to "non-Royalty Artists." *See* Stolz Decl. Ex. B (2015-2017 MOA, §5.2(b), at p. 3). In industry parlance, a "Royalty Artist" is an artist with an individual recording contract with a record label, *see id.* Ex. A (Sound Recordings CBA, §1(A), at p. 3), while a "non-Royalty Artist" is a vocalist who performs on a song covered by the Sound Recordings CBA without an individual recording contract. Background singers are in most cases non-Royalty Artists. Royalty Artists typically negotiate individual agreements for downstream compensation with their record labels and do not receive SRDF payments.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

### 3. Residuals

When a vocalist performs on a song recorded under the Theatrical CBA, the performer may in some circumstances be entitled to downstream compensation distributed to artists, writers, actors, directors, etc. when a film is rebroadcast or streamed, also known as "residuals." The Theatrical CBA contains numerous provisions governing the payment of residuals. *See, e.g., id.* Exs. D (Theatrical CBA, § 5, at p. 8-16 (residuals for films rebroadcast on network television)); E (Sideletter No. 22 (residuals for films streamed on the internet or streaming services)). Film studios pay residuals directly to performers, though SAG-AFTRA facilitates the distribution of residual checks. *Id.* Ex. D (Theatrical CBA, § 5(E), at p. 11). The Fund plays no role in the distribution of residuals. Any disputes over residuals payments are governed by the Theatrical CBA's grievance and arbitration procedures, and must be raised within one year. *See id.* Ex. D (Theatrical CBA, § 9(F)(1), at p. 55-56).

### 4. Statutory Royalties

Independent of session wages, SRDF payments and residuals, which are guaranteed by CBAs, Congress has enacted a statutory scheme for the payment of royalties to musicians and vocalists when their songs are played on certain digital streaming services.[4] *See* FAC ¶66. Section 106(6) of the Copyright Act, 17 U.S.C. § 106(6), grants copyright owners of sound recordings the exclusive right to perform copyrighted sound recordings publicly by means of a digital audio transmission. Digital streaming services may perform copyrighted sound recordings publicly without receiving the copyright holder's permission so long as the service pays statutory licensing fees to the copyright holder and the artists who performed on the sound

---

[4] Though the FAC uses the terms "royalties" and "residuals" interchangeably, we use "statutory royalties" to refer to these statutory payments, "SRDF payments" to refer to downstream compensation guaranteed by the Sound Recordings CBA and paid by the SRDF, and "residuals" to refer to payments for film rebroadcasts guaranteed by the Theatrical CBA and paid by the film studios.

DEFENDANTS SAG-AFTRA AND AFM & SAG-AFTRA INTELLECTUAL PROPERTY RIGHTS DISTRIBUTION FUND'S MOTION TO DISMISS

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

recording. *See* 17 U.S.C. § 114(g); *SoundExchange, Inc. v. Copyright Royalty Bd.*, 904 F.3d 41, 46 (D.C. Cir. 2018).

Under the statutory licensing arrangement, an audio service broadcasting a copyrighted sound recording must pay the statutory licensing fee (or "statutory royalty") to SoundExchange, Inc. ("SoundExchange"), a nonprofit organization authorized to receive and distribute statutory royalties. *See* 17 U.S.C. § 114(g)(2); 37 C.F.R. § 380.4(d). SoundExchange must distribute the statutory royalties it receives pursuant to a statutory formula: 50% to the copyright holder (typically the record label); 45% to the "featured" artist(s) on the sound recording (the main artist(s) or band, along with any named guest artists); 2.5% to the "nonfeatured" musicians (*e.g.* session musicians); and 2.5% to the "nonfeatured" vocalists (*e.g.* background singers). 17 U.S.C. § 114(g)(2); *see generally Ithier v. Aponte-Cruz*, 105 F.4th 1 (1st Cir. 2024).

SoundExchange distributes the 95% of statutory royalties owed to copyright holders and featured artists. 17 U.S.C. § 114(g)(2). SoundExchange does not, however, directly distribute the remaining 5% of statutory royalties owed to nonfeatured artists. Instead, the statute requires SoundExchange to pass the nonfeatured musician and vocalist statutory royalties on to an "independent administrator" appointed by the copyright owners and the labor unions representing musicians and vocalists. 17 U.S.C. § 114(g)(2)(B)-(C). The Fund is the independent administrator responsible for distributing statutory royalties to nonfeatured musicians and vocalists. FAC ¶66.

To be clear, SoundExchange, not the Fund, distributes statutory royalties to copyright holders and *featured* artists. The Fund only collects and distributes statutory royalties to *nonfeatured* musicians and vocalists. Neither the Sound Recordings CBA nor the Theatrical CBA distinguishes between featured and nonfeatured vocalists. That distinction is only relevant for the statutory royalty scheme. If a vocalist believes they were wrongly omitted as a featured artist on a track, they must raise the issue with SoundExchange, which distributes statutory royalties to featured performers. *See* 37

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

DEFENDANTS SAG-AFTRA AND AFM & SAG-AFTRA INTELLECTUAL PROPERTY RIGHTS DISTRIBUTION FUND'S MOTION TO DISMISS

C.F.R. § 380.6; *see also Ithier*, 105 F.4th at 7-13. Neither SAG-AFTRA nor the Fund administers the distribution of statutory royalties to featured artists.

### D.    Causes of Action Pleaded

Plaintiff pleads four causes of action each against SAG-AFTRA and the Fund. Against both SAG-AFTRA and the Fund, Plaintiff pleads that they breached an implied-in-fact employment contract governing his performance on the Song (second cause of action), engaged in unspecified unfair, unlawful, and fraudulent conduct in violation of California Business and Professions Code § 17200 (the "UCL") (sixth cause of action), and breached the Sound Recordings CBA by failing to pay Plaintiff compensation he was owed for his performance on the Song (seventh cause of action). Solely against SAG-AFTRA, Plaintiff pleads that the union engaged in a conspiracy with the Corporate Defendants to defraud him of payments for his performance on the Song (fifth cause of action). And solely against the Fund, Plaintiff pleads that the Fund breached its fiduciary duty to him by negligently accepting Warner's characterization of the Song as "non-theatrical" and Plaintiff's performance as "non-featured" (fourth cause of action). All of the FAC's claims against both SAG-AFTRA and the Fund should be dismissed under Rule 12(b)(6) as either preempted by federal law, as time-barred, and/or for failure to state a claim.[5]

### ARGUMENT

## I.    Standard of Review

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

---

[5] Though there are insufficient facts on the record to adjudicate the issue, the Fund notes that, on information and belief, Plaintiff is not the real party in interest under Fed. R. Civ. P. 17(a) entitled to bring claims against the Fund, as Plaintiff has sold his right to collect nonfeatured artist royalties from the Fund to a third party. The Fund reserves the right to challenge Plaintiff's status as the real party in interest at a later stage of litigation. In addition, though there may be insufficient facts on the record to

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A plaintiff's claims must be more than just "conceivable" or "speculative," *Twombly,* 550 U.S. at 555, 570, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. The complaint must be dismissed if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

Not all facts in a complaint are entitled to an inference of truth at the motion to dismiss stage. "First, to be entitled to the presumption of truth, allegations in a complaint… must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In addition, on a motion to dismiss under Rule 12(b)(6), the court may treat a document incorporated into the complaint by reference as "part of the complaint, and thus may assume that [the document's] contents are true for purposes of a motion to dismiss." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (internal citation and quotation omitted). This rule applies equally to documents whose contents are alleged in the complaint and documents "crucial to the plaintiff's claims, but not explicitly incorporated into his complaint." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded on other grounds by* the Class Action Fairness Act of 2005, Pub. L.

---

determine whether all Plaintiff's claims are barred by relevant statutes of limitations, SAG-AFTRA and the Fund reserve the right to challenge all causes of action as time-barred at a later stage of litigation if necessary.

109-2, 119 Stat. 4-14.[6] This rule is designed to "prevent[] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Id.* at 706. If a court considers a document incorporated into the complaint by reference, the court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations which are contradicted by documents referred to in the complaint." *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (internal citations and quotations omitted).

Plaintiff does not attach either the Sound Recordings CBA or the Theatrical CBA to the FAC. However, it is permissible for the Court to consider both CBAs on a motion to dismiss as documents "whose contents are alleged in a complaint" and "upon which the plaintiff's complaint necessarily relies." *Parrino*, 146 F.3d at 705-06. The FAC refers to the Sound Recordings CBA directly and pleads a breach of contract claim naming the Sound Recordings CBA as the contract allegedly breached. *See* FAC ¶¶ 61, 130-134. While the FAC does not reference the Theatrical CBA by name (as Plaintiff may be confused about the scope of each CBA), Plaintiff repeatedly pleads his entitlement to residuals, which are governed by the Theatrical CBA. *See* FAC ¶¶113, 127, 133.

Finally, allegations containing elements of fraud are subject to a heightened pleading standard on a motion to dismiss under Rule 9(b). The plaintiff must plead "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To survive a motion to dismiss, the complaint "must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *United States ex rel.*

---

[6] The attachment of documents referenced in the complaint or relied upon by the complaint does not convert a motion to dismiss into a motion for summary judgment. *Id.* at 706, n.4.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation and citation omitted). "[A]llegations of fraud must be specific enough to give defendants notice of the particular misconduct… so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation and citation omitted).

## II. Federal Labor Law Preempts Most of Plaintiff's Claims Against SAG-AFTRA and the Fund

The Court should dismiss Plaintiff's Fifth, Sixth, and Seventh Causes of Action because they are preempted by federal labor law. Any session wages or benefits, SRDF payments, or residuals Plaintiff seeks to recover through this suit are entitlements created and guaranteed by CBAs, which are governed exclusively by federal labor law. As a result, federal labor law preempts Plaintiff's state law claims seeking to vindicate rights created and payments guaranteed by the CBAs.

There are two distinct doctrines of federal preemption relevant to these causes of action: preemption under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("Section 301"), and preemption under the federal duty of fair representation ("DFR"). Section 301 preempts state law claims relating to rights or relationships arising from a CBA and thus applies equally to SAG-AFTRA and the Fund. The DFR preempts state law claims related to a union's statutory role as a collective bargaining representative and thus applies only to SAG-AFTRA, as the Fund is not a labor union.

### A. Section 301 Preemption

Section 301 grants federal courts original jurisdiction over suits to enforce CBAs. 29 U.S.C. § 185(a); *Avco Corp. v. Aero Lodge No. 735, IAM*, 390 U.S. 557, 559-62 (1968). Interpreting this jurisdictional grant, the Supreme Court has held that Section 301 preempts state law claims to enforce a CBA *or* which require the interpretation of a CBA, as the administration of CBAs is governed exclusively by

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

federal law. *See IBEW v. Hechler*, 481 U.S. 851, 855-59 (1987); *Caterpillar v. Williams*, 482 U.S. 386, 394 (1987) ("State law does not exist as an independent source of private rights to enforce collective bargaining contracts.") (internal quotation and citation omitted); *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. Fund for S. Cal.*, 463 U.S. 1, 23 (1983).

In other words, if a plaintiff alleges that a labor union violated a CBA, their only recourse is a federal Section 301 suit. Any state law causes of action premised on the alleged breach are preempted. *See Hechler*, 481 U.S. at 859 n.3 ("[A] plaintiff may not evade the pre-emptive force of § 301 of the LMRA by casting the suit as a state-law claim.").

In addition to breach of contract claims, Section 301 also preempts tort claims that require the court to *interpret* a CBA. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-13 (1985); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988) (Section 301 preempts state law claims whose "resolution… depends upon the meaning of a collective-bargaining agreement."). While the nuances of what exactly constitutes "interpretation" of a CBA can be complex, *see Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032-34 (9th Cir. 2016), the case law is clear that Section 301 preempts state law claims alleging that a union has misrepresented the contents of a CBA because such claims necessarily require the court to determine whether the union's interpretation of the CBA was accurate. *See Adkins v. Mireles*, 526 F.3d 531, 541 (9th Cir. 2008); *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1017 (9th Cir. 2000) (Section 301 preempts state law fraud claim: "[T]here is no way to assess the alleged misrepresentation without examining the instrument that has been misrepresented, the CBA.").

          1.      <u>Section 301 Preempts Plaintiff's Breach of Contract Claim (Seventh Cause of Action) against SAG-AFTRA and the Fund</u>

Plaintiff's state contract claim alleging that SAG-AFTRA and the Fund breached the Sound Recordings CBA, FAC ¶¶129-134, is preempted by Section 301, which

DEFENDANTS SAG-AFTRA AND AFM & SAG-AFTRA INTELLECTUAL PROPERTY RIGHTS DISTRIBUTION FUND'S MOTION TO DISMISS

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

exclusively governs suits to enforce CBAs and preempts state law claims alleging breach of a CBA. *See Hechler*, 481 U.S. at 855-57; *Kane v. Matson Navigation Co.*, 645 F. Supp. 3d 942, 949 (N.D. Cal. 2022) ("If the contract purportedly breached was the CBA, then section 301 clearly preempts the claim."); *Clark v. Prudential Fin., Inc.*, No. CV 10–4953 GAF (PJWx), 2010 WL 11601071, at *1-2 (C.D. Cal. Sept. 3, 2010).

    2.    <u>Section 301 Preempts Plaintiff's Conspiracy to Defraud Claim (Fifth Cause of Action) against SAG-AFTRA</u>

As described further *infra*, Part IV(B), Plaintiff's fraud allegations against SAG-AFTRA, FAC ¶124, are far too vague to give SAG-AFTRA adequate notice of what exactly Plaintiff thinks SAG-AFTRA lied about. That said, to the extent that Plaintiff alleges that SAG-AFTRA made false statements regarding either the Sound Recordings CBA or the Theatrical CBA (*e.g.*, to the extent Plaintiff alleges that SAG-AFTRA made statements about which CBA governs the Song, or to the extent he alleges that SAG-AFTRA made statements about downstream compensation that may or may not be owed under either CBA), Section 301 preempts any state law causes of action based on those allegations. To determine the truthfulness of SAG-AFTRA's alleged assertions concerning the CBA, the court would necessarily have to interpret the CBAs, triggering Section 301 preemption. *See, e.g.*, *Adkins*, 526 F.3d at 541; *Aguilera*, 223 F.3d at 1017; *Jay v. SEIU-United Health Care Workers W.*, 203 F. Supp. 3d 1024, 1034-36 (N.D. Cal. 2016); *Cabarga v. S. Cal. Edison Co.*, No. 14-CV-08813 (JAK) (ASx), 2015 WL 13914792 (C.D. Cal. Mar. 19, 2015) (Section 301 preempts fraud, California UCL, and other tort claims based on the allegation that the union lied about an effects bargaining agreement that undermined the plaintiffs' job protections; to resolve the claim, the court would have to interpret the effects bargaining agreement and the CBA to determine whether the union had misrepresented those documents).

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

DEFENDANTS SAG-AFTRA AND AFM & SAG-AFTRA INTELLECTUAL PROPERTY RIGHTS DISTRIBUTION FUND'S MOTION TO DISMISS

### 3. Section 301 Preempts Plaintiff's Claim for Breach of California's Unfair Competition Law (Sixth Cause of Action)

In support of his claim for breach of the UCL, Plaintiff vaguely asserts that as "a result of Defendants' unlawful, unfair, and fraudulent acts, [Plaintiff] was cheated out of residual payments." FAC ¶127. Any entitlement Plaintiff may have to residuals derives solely from, and requires interpretation of, the Theatrical CBA. Accordingly, Section 301 preempts this claim. *Jay*, 203 F. Supp. at 1035-36 (Section 301 preempts UCL claim); *Cabarga*, 2015 WL 13914792 (same).

### 4. Plaintiff Cannot Replead his Preempted Claims as Section 301 Claims

Once state law claims are held to be preempted by Section 301, those claims must either be treated as federal breach of contract claims under Section 301 or dismissed. *See Allis-Chalmers*, 471 U.S. at 220. To plead a Section 301 claim for breach of a CBA, the plaintiff must first exhaust the CBA's grievance and arbitration procedure. *Id.* at 219; *Carr v. Pac. Mar. Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990) (dismissing Section 301 and DFR claims; "Failure to utilize the grievance procedures, or to invoke them in a timely manner, bars grievants from pursuing remedies in court.").

Plaintiff does not plead that he made any recourse to the grievance and arbitration procedure of the Sound Recordings CBA or the Theatrical CBA in an attempt to recover money he may be owed under either CBA. As a result, Plaintiff cannot now replead his preempted state law claims as Section 301 claims.[7]

---

[7] Even if Plaintiff could replead his preempted state law claims as Section 301 claims, those claims would be time-barred under Section 301's six-month statute of limitations. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169 (1983); *Kelley v. IBEW*, 803 F.2d 516, 518 (9th Cir. 1986) (applying a six-month statute of limitations to "claims for breach of the [CBA]."). Plaintiff alleges that the defendants breached the Sound Recordings CBA by failing to pay Plaintiff session wages and benefits and "reuse and residual compensation" related to Plaintiff's work on the

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

## B.    DFR Preemption

DFR preemption derives from a labor union's statutory role as the exclusive representative of employees in a bargaining unit. The DFR is a labor union's statutory duty to represent employees fairly and evenhandedly in the union's dealings with an employer. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). Whether a union's actions breach the DFR is a question of substantive federal law, *see id.*, at 188-95, and federal courts have long held that a union only violates the DFR when its conduct towards a bargaining unit member is arbitrary, discriminatory, or in bad faith. *See Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998). Negligent conduct does not constitute a breach of the DFR. *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-73 (1990).

Allowing plaintiffs to circumvent the DFR by refashioning their claims of unfair or inadequate representation as state law claims against a union would subject unions to a panoply of conflicting state law obligations. Thus, to maintain the uniformity of federal DFR standards, Circuit courts and district courts in this Circuit have repeatedly held that the DFR preempts state law claims that fall within the scope of a union's statutory duty to represent employees fairly. *See Adkins*, 526 F.3d at 541 (fraud); *Culfin v. IBEW Local 11*, No. CV 10-02748 DDP (VBKx), 2010 WL 2465393, at *3 (C.D. Cal. June 15, 2010) (UCL claim); *see also Johnson v. UFCW, Int'l Union Loc. No. 23*, 828 F.2d 961, 967 (3d Cir. 1987) (fraud); *Peterson v. Air Line Pilots Ass'n*, 759 F.2d 1161, 1171 (4th Cir. 1985) (tortious interference with contractual relations and conspiracy); *Condon v. Local 2944*, 683 F.2d 590, 595 (1st Cir. 1982) (tort and common law duty of care).

Song. FAC ¶133. Although Plaintiff is careful to avoid naming specific dates, he alleges that he participated in one recording session for the Song "in early 2015." FAC ¶6. Plaintiff brought this suit *eleven years* later, in February 2026, undoubtedly more than six months after any claim for wages, benefits, and downstream compensation would have accrued.

DEFENDANTS SAG-AFTRA AND AFM & SAG-AFTRA INTELLECTUAL PROPERTY RIGHTS DISTRIBUTION FUND'S MOTION TO DISMISS

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Here, Plaintiff makes only two material allegations against SAG-AFTRA. *First*, Plaintiff alleges that SAG-AFTRA, acting as a conduit between Warner and the Fund, unwittingly passed misleading information about the Song from Warner to the Fund. FAC ¶68-69. *Second*, Plaintiff alleges that SAG-AFTRA made unspecified "false and misleading statements" to Plaintiff to convince him to stop investigating the alleged classification of the Song as nontheatrical and Plaintiff's performance as nonfeatured. FAC ¶124. From these two allegations, the FAC pleads two causes of action— conspiracy to defraud (fifth cause of action) and violation of the UCL (sixth cause of action).

Because both material allegations leveled against SAG-AFTRA describe the union operating in its capacity as the collective bargaining representative of vocalists that perform under SAG-AFTRA's CBAs, and because Plaintiff does not allege that SAG-AFTRA breached additional duties beyond the scope of the DFR, both causes of action as pleaded against SAG-AFTRA are DFR preempted and therefore should be dismissed. *See, e.g.*, *Adkins*, 526 F.3d at 537-41 (DFR preempts state law claims alleging union failed to protect plaintiffs' interests in negotiations with the employer and lied to plaintiffs about the status of negotiations); *James v. United Furniture Workers Local 8926*, No. 21-cv-03893-JCS, 2021 WL 3616776, at *6-7 (N.D. Cal. Aug. 16, 2021) (dismissing plaintiff's state law negligence, fraud, and UCL claims as DFR preempted; plaintiff alleged in relevant part that the union uncritically accepted fraudulent disciplinary paperwork from the employer); *Jay*, 203 F. Supp. 3d at 1036-37 (dismissing plaintiff's state law covenant of good faith and fair dealing and UCL claims as DFR preempted, holding that allegation that the union misrepresented the terms of a letter of agreement with the employer falls within the scope of the DFR);

*Martin v. Masters, Mates & Pilots*, No. 25-cv-04382-RFL, 2025 WL 2444589, at *2 (N.D. Cal. Aug. 25, 2025) (DFR preempts state law claim).[8]

### III. Plaintiff Fails to State a Claim Against the Fund for Breach of Fiduciary Duty (Fourth Cause of Action)

Plaintiff alleges three distinct fiduciary breaches on the part of the Fund: *first*, that the Fund accepted statutory royalty payments owed to Plaintiff without having the information necessary to identify Plaintiff; *second*, that the Fund uncritically accepted Warner's representation that Plaintiff was a nonfeatured vocalist on the Song; and *third*, that the Fund uncritically accepted Warner's claim that the Song was nontheatrical. FAC ¶115. The second and third allegations fail as a matter of law because the Fund does not collect or distribute featured artist statutory royalties or film residuals and thus owes no fiduciary duties regarding such funds.[9] The first allegation fails because Plaintiff does not, and cannot, allege that the Fund failed to distribute nonfeatured vocalist royalties to him. Because Plaintiff acknowledges the Fund paid him nonfeatured vocalist statutory royalties, he does not adequately plead a fiduciary breach.

There are three elements to a fiduciary breach claim under California law: 1) existence of a fiduciary duty, 2) breach, and 3) proximate damages. *Winebarger v. Penn. Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1091 (C.D. Cal. 2019).

---

[8] If Plaintiff wishes to replead his claims against SAG-AFTRA as a DFR claim, the claim would be subject to a six-month statute of limitations. *See Kalombo v. Hughes Market, Inc.*, 886 F.2d 258, 259 (9th Cir. 1989) (citing *DelCostello*, 462 U.S.).

[9] Plaintiff asserts that the Fund negligently accepted Warner's characterization of the Song as "nontheatrical," which deprived him of "royalties that come from music exploited as part of theatrical motion pictures or other audiovisual works." FAC ¶113. To the extent Plaintiff means to assert that the Fund's alleged fiduciary breach deprived him of *residuals*, the fiduciary breach claim is preempted by Section 301. Any entitlement Plaintiff may have to residuals derives solely from, and requires interpretation of, the Theatrical CBA. *See supra*, Part II(A)(3).

18

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

While breach is a question of fact, the existence of a fiduciary duty is a question of law. *Id*. Though Plaintiff does not describe the nature of the duty the Fund allegedly breached, he alleges that the Fund holds statutory royalty payments "in trust for the benefit of the musicians," and that the Fund acted negligently in various ways that led to Plaintiff receiving less royalty compensation than he was owed. FAC ¶¶114, 115. Thus, Plaintiff appears to allege a breach of the Fund's duty of prudence, or its duty to administer the funds held in trust with "reasonable care, skill, and caution." *See* Cal. Prob. Code § 16040(a); *see also* Restatement (Third) of Trusts § 77(1)-(2) (2007). But the duty of prudence applies only to funds held in trust, not to funds outside the trustee's control. *See* Cal. Prob. Code § 16040(a) ("The trustee *shall administer the trust* with reasonable care, skill, and caution…") (emphasis added). Because the Fund does not collect or distribute featured artist statutory royalties (paid by SoundExchange, *see* 17 U.S.C. § 114(g)(2)(D)) or film residuals (paid by studios, *see* Stolz Decl. Ex. D (Theatrical CBA, § 5(E), p. 11)), it owes no fiduciary duty with respect to those payments and any fiduciary claim seeking their recovery from the Fund must be dismissed.

Finally, the first allegation, that the Fund breached its duty of prudence by failing to identify Plaintiff as a performer on the Song, cannot be true based on the allegations pleaded in the FAC. If the Fund had never identified Plaintiff as a performer on the Song, then it stands to reason that the Fund would never have distributed nonfeatured vocalist royalties to Plaintiff in the decade since the Song was released. But Plaintiff acknowledges he received nonfeatured artist statutory royalties from the Fund. *See* FAC ¶73 ("[A]s a result of Warner's hiding Plaintiff's identity, *royalty payments due to [Plaintiff] were delayed*…") (emphasis added); FAC ¶¶109-110 (Because the Fund "was forced to accept Warner's characterization of Plaintiff as merely a non-featured back-up singer… the Fund *paid [Plaintiff] significantly less than he was due* in royalty payments.") (emphasis added). While Plaintiff may believe he is entitled to additional compensation as a featured artist or through film residuals, he does not and cannot

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

allege that the Fund failed to distribute any nonfeatured artist statutory royalties, the sole funds for which it is responsible.[10]

### IV.    Plaintiff Fails to Plausibly Allege the Elements of His Remaining Claims

**A.    Plaintiff Fails to State a Claim Against SAG-AFTRA or the Fund for Breach of an Implied-in-Fact Contract (Second Cause of Action)**

Plaintiff's claim for breach of implied-in-fact contract as pleaded against SAG-AFTRA and the Fund must be dismissed because he pleads no facts indicating that SAG-AFTRA or the Fund was in any way involved in the alleged creation or breach of the implied contract. The gravamen of Plaintiff's breach of implied-in-fact contract claim is that Plaintiff had an implied-in-fact employment contract with Warner and/or NBC covering Plaintiff's performance on the Song. *See* FAC ¶¶93, 97. Plaintiff pleads no facts implicating SAG-AFTRA or the Fund in the creation or breach of this alleged contract. *See, e.g., Kobayashi v. McMullin*, No. 2:19-cv-06591-SSS (MAA), 2023 WL 3493991, at *14 (C.D. Cal. Mar. 2, 2023).

**B.    Plaintiff Fails to State a Claim Against SAG-AFTRA or the Fund for Breach of the Sound Recordings CBA (Seventh Cause of Action)**

Apart from being preempted, Plaintiff's seventh cause of action for breach of the Sound Recordings CBA,[11] as pleaded against SAG-AFTRA and the Fund, also fails for two independent reasons.

*First*, while Plaintiff alleges that the Corporate Defendants breached the Sound Recordings CBA by failing to pay Plaintiff session wages and benefits or other

---

[10] In addition, Plaintiff cannot maintain a fiduciary breach claim against the Fund. Under California law, fiduciary breach claims may only be brought against individual trustees, not a trust itself. *Presta v. Tepper*, 102 Cal. Rptr. 3d 12, 16 (Cal. Dist. Ct. App. 2009).

[11] Plaintiff names the "SAG CBA," identified earlier as the "Sound Recordings Agreement," FAC ¶61, as the operative contract allegedly breached. FAC ¶133.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

compensation deriving from his performance, FAC ¶133, Plaintiff pleads no facts alleging that either SAG-AFTRA or the Fund breached a material term of the Sound Recordings CBA. Under the Sound Recordings CBA, as with any other CBA, compensation and benefits are owed by the employer, not SAG-AFTRA or the Fund. *See generally*, Stolz Decl. Ex. A (Sound Recordings CBA, §§ 6-7, at p. 5-11 (governing session wages), and § 34, at p. 18-22) (governing employer contributions to the health and retirement funds)).

*Second*, regarding the Fund only, the claim fails because the Fund is not a signatory to the Sound Recordings CBA and thus cannot breach the contract. The Sound Recordings CBA is an industry-wide agreement between SAG-AFTRA and various companies engaged in the production and sale of sound recordings. *See id.* Ex. A (Sound Recordings CBA, at p. 1-2). Under California law a plaintiff cannot maintain a breach of contract action against a defendant that is not party to the contract. *See, e.g.*, *Mayes v. Sturdy N. Sales, Inc.*, 154 Cal. Rptr. 43, 48 (Cal. Dist. Ct. App. 1979), *disapproved of on other grounds by Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454 (Cal. 1994).

## C.    Plaintiff Fails to State a Claim Against SAG-AFTRA for Conspiracy to Defraud (Fifth Cause of Action)

Beyond the preemption arguments described above, Plaintiff's claim that SAG-AFTRA participated in a conspiracy to defraud Plaintiff fails because he does not plead the incidents of the alleged fraud with particularity as required by Rule 9(b) and he does not plead the necessary elements of a conspiracy.

First, as described *supra*, Part I, fraud allegations are subject to a heightened pleading standard under Rule 9(b). To survive a motion to dismiss, plaintiffs must identify which statements are fraudulent, what specifically about those statements is fraudulent, and why they are fraudulent. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). "[M]ere conclusory allegations of

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

fraud are insufficient." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

Plaintiff does not come close to meeting this heightened pleading standard. Plaintiff's fraud allegation against SAG-AFTRA consists of a single sentence: "Once it became clear to the AFM Fund that its own negligence allowed Warner and NBC to defraud Plaintiff, SAG engaged in a coverup, making false and misleading statements to Plaintiff to convince him to drop his investigation." FAC ¶124. Plaintiff does not identify or describe any specific statements SAG-AFTRA made to Plaintiff, and it does not describe what about those unspecified statements was fraudulent or why. *See Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001); *Moore*, 885 F.2d at 540. "This type of allegation, which identifies a general sort of fraudulent conduct but specifies no particular circumstances of any discrete fraudulent statement, is precisely what Rule 9(b) aims to preclude." *Cafasso*, 637 F.3d at 1057.[12]

Second, Plaintiff fails to state a claim for conspiracy against SAG-AFTRA. While Plaintiff may allege that the Corporate Defendants engaged in a conspiracy to defraud him, he pleads no facts indicating that SAG-AFTRA agreed to join this conspiracy. Under California law, the elements of a conspiracy are 1) formation of the conspiracy, 2) wrongful conduct in furtherance of the conspiracy, and 3) damages. *Ajzenman v. Office of the Comm'r of Baseball*, 487 F. Supp. 3d 861, 867 (C.D. Cal. 2020). To show the formation of a conspiracy, the plaintiff must prove that each alleged participant 1) knew of the wrongdoing, 2) agreed to join in the wrongdoing, 3) with the intent to aid in the wrongdoing. *Id.* In other words, the formation of a conspiracy

---

[12] SAG-AFTRA suspects that Plaintiff chose not to reference or attach his communications with SAG-AFTRA for two reasons. First, even a cursory review of the communications would satisfy the court that SAG-AFTRA did not commit fraud. Second, if Plaintiff acknowledged the dates of his communications with SAG-AFTRA, it would be clear that his claims, to the extent they are preempted by the DFR and/or Section 301, are barred by the six-month statute of limitations.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

requires a meeting of the minds between co-conspirators. *See Fleites v. MindGeek S.A.R.L.*, 801 F. Supp. 3d 1011, 1037 (C.D. Cal. 2025).

Plaintiff pleads no facts indicating that there was ever a meeting of the minds between SAG-AFTRA and the Corporate Defendants to engage in a conspiracy to defraud Plaintiff. The FAC does not allege any communication between SAG-AFTRA and the Corporate Defendants regarding payments owed to Plaintiff, and it offers no explanation as to why SAG-AFTRA would have any incentive to lie to Plaintiff to cover up the Corporate Defendants' alleged fraud or the Fund's alleged negligence. *See id.* (formation of a conspiracy can only be inferred if the plaintiff pleads "prolonged and actively pursued course of dealing… coupled with the [defendant's] knowledge of and shared stake in the [co-conspirator's] unlawful venture"). SAG-AFTRA may not have given Plaintiff the answers he wanted to hear when he raised concerns about royalty and residual payments, but Plaintiff's disappointment does not create a conspiracy.[13]

## D. Plaintiff Fails to State a Claim Against SAG-AFTRA or the Fund for Breach of California's Unfair Competition Law (Sixth Cause of Action)

Finally, Plaintiff pleads a blanket cause of action alleging that, by the sum of the conduct alleged in the FAC, all defendants engaged in unlawful, unfair, and fraudulent business practices in violation of the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.* The UCL claim is pleaded in a scattershot manner. Though the UCL's unlawful, unfair, and fraudulent prongs are separate claims with separate legal standards, *see Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151-52 (9th Cir. 2008), Plaintiff does not specify what conduct by what defendant is allegedly unlawful, unfair, or fraudulent.

---

[13] In addition, conspiracy is not an independent tort under California law. *Hyles v. Mensing*, 849 F.2d 1213, 1217 (9th Cir. 1988). If Plaintiff's fraud claim fails, his conspiracy claim must fail with it.

DEFENDANTS SAG-AFTRA AND AFM & SAG-AFTRA INTELLECTUAL PROPERTY RIGHTS DISTRIBUTION FUND'S MOTION TO DISMISS

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

When addressing catchall UCL claims tacked on to a long list of other causes of action, courts routinely treat the UCL claim as derivative of, and dependent on, the other claims in the complaint. *See e.g. Persian Gulf, Inc. v. BP W. Coast Prods., LLC*, 632 F. Supp. 3d 1108, 1174-75 (S.D. Cal. 2022); *Taguinod v. World Sav. Bank, FSB*, 755 F. Supp. 2d 1064, 1074-75 (C.D. Cal. 2010). Because Plaintiff's other causes of action fail because they are preempted or fail to state a claim, Plaintiff's UCL claim, as a derivative claim, must be dismissed as well. *See Taguinod*, 755 F. Supp. 2d at 1074-75; *Mellon v. Universal City Studios, LLC*, 625 F. Supp. 3d 1007, 1016 (C.D. Cal. 2022) (dismissing UCL claim because predicate claims were preempted by Section 301); *Kacher Firestopping, Inc. v. Local No. 5*, No. SACV 08-00610-CJC(ANx), 2008 WL 11337452, at *5 (C.D. Cal. June 30, 2008) (same).[14]

## CONCLUSION

For all the foregoing reasons, Plaintiff's claims against Defendants SAG-AFTRA and the Fund should be dismissed with prejudice.

DATED:  May 6, 2026

COHEN WEISS AND SIMON LLP

By:    */s/ Olivia R. Singer*

OLIVIA R. SINGER
MATTHEW E. STOLZ
Attorneys for Defendants Screen Actors Guild-American Federation of Television and Radio Artists and AFM & SAG-AFTRA Intellectual Property Rights Distribution Fund

---

[14] Even Plaintiff adequately pled a UCL violation, Plaintiff would not be entitled to any monetary recovery against SAG-AFTRA or the Fund, as the UCL does not permit private plaintiffs to recover damages, and neither SAG-AFTRA nor the Fund is in possession of any compensation allegedly owed. *See Kasky v. Nike, Inc.*, 45 P.3d 243, 249 (Cal. 2002).

**Local Rule 5-4.3.4(a)(2)(i) Certification**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filer attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DEFENDANTS SAG-AFTRA AND AFM & SAG-AFTRA INTELLECTUAL PROPERTY RIGHTS DISTRIBUTION FUND'S MOTION TO DISMISS